**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, AZOOGLEADS.COM, INC

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

FILED
2008 JUN -6 PM 3: 52
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HYPERTOUCH, INC**, a California corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>**AZOOGLE, INC.**, a Delaware corporation, **INTUIT INC.**, a Delaware corporation, **QUICKEN LOANS, INC.**, a Delaware corporation, **ROCK HOLDINGS, INC.**, a Delaware corporation, and **DOES 1 through 30**, inclusive,<br><br>      Defendants. | Case No. CV08-03739 GHK PJWx<br>[Los Angeles County Superior Court Case No. SC097839]<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (DIVERSITY)** |

Dockets.Justia.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendant AzoogleAds.com, Inc. ("Azoogle")[1] hereby removes this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California and sets forth in support of its Notice of Removal of Action the following:

1.     On April 15, 2008, an action was commenced in the Superior Court of the State of California, County of Los Angeles, entitled *Hypertouch, Inc. v. Azoogle, Inc.,* as Case Number SC097839.  True and correct copies of the complaint (the "Complaint") and summons in that action are attached hereto as Exhibits A and B, respectively.

2.     On May 19, 2008, Plaintiff Hyptertouch, Inc. ("Hypertouch") filed proofs of service as to all four named defendants.  True and correct copies of those proofs of service are attached hereto as Exhibit C.

3.     According to the proof of service relating to Azoogle, Hypertouch served Azoogle by means of personal delivery to Azoogle's registered agent, CT Corporation Systems in New York, New York, on the afternoon of May 7, 2008.  On information and belief, however, CT Corporation Systems did not receive, and has no record of receiving, such delivery.

4.     According to the proof of service relating to Rock Holdings, Inc. ("Rock Holdings"), Hypertouch served Rock Holdings by means of substitute service delivered to an office in Santa Monica, California on the afternoon of May 7, 2008.  On information and belief, however, Rock Holdings is not registered to do, and does not do, business in California, and does not have any office or other place of business in California.[2]

---

[1] Plaintiff improperly refers to Azoogle as Azoogle, Inc.

[2] It appears from the related proof of service and from records on file with

NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. § 1441(a) (DIVERSITY)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Hypertouch could not therefore have effected, and did not effect, valid service on Rock Holdings.

5.     On May 30, 2008, Hypertouch granted Azoogle until June 24, 2008 to respond to the Complaint.  Previously, Hypertouch had granted defendants Quicken Loans, Inc. ("Quicken Loans") and Intuit Inc. ("Intuit") 15-day extensions of time to respond to the Complaint.

## The Amount in Controversy Requirement is Satisfied

6. The Complaint alleges that Hypertouch received over 380,000 commercial emails in violation of California Business & Professions Code §17529.5 and §§17200 *et seq.*  Hypertouch prays for statutory damages under California Business & Professions Code §17529.5(b)(1)(B) in the amount of $1,000 per email, amounting to an amount in controversy of $380,000,000.

## Complete Diversity Exists

7.     Hypertouch's Complaint alleges that it is a California corporation, with its principal place of business in Menlo Park, California.

8.     Azoogle is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.  Azoogle is not, and was not at any relevant time, a citizen of the State of California.

9.     Quicken Loans is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Michigan, with its principal place of business in the State of Michigan.  Quicken Loans is not, and was not at any relevant time, a citizen of the State of California.

the California Secretary of State that the "Rock Holdings" served by Hypertouch is a separate entity incorporated and headquartered in California, and is not the Rock Holdings named in the Complaint.  Attached hereto as Exhibit D is a true and correct copy of the California Secretary of State corporate registration pertaining to that separate "Rock Holdings."

CASE NO.

3

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (DIVERSITY)**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

10.    Intuit is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.   The Complaint, however, does not allege any facts that relate in any way to Intuit, and does not allege a connection between Intuit and any other party.   Intuit once owned Quicken Loans, but divested itself of its controlling stake in 2002. Attached hereto as Exhibit E is a true and correct copy of an Intuit SEC filing describing such divestment.   On information and belief, Hypertouch fraudulently joined Intuit for the sole purpose of attempting to defeat diversity jurisdiction.

11.    On information and belief, Rock Holdings is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Michigan, with its principal place of business in the State of Michigan.   Rock Holdings is not, and was not at any relevant time, a citizen of the State of California.   The Complaint does not allege any facts that relate in any way to Rock Holdings, and does not allege a connection between Rock Holdings and any other party.[3]   As stated above, Rock Holdings is not registered to do, and does not do, business in California, and does not have any office or other place of business in California.   On information and belief, Hypertouch fraudulently joined Rock Holdings—believing it was the "Rock Holdings" incorporated and headquartered in California—for the sole purpose of attempting to establish venue in the Central District of California, rather than the Northern District of California, where Hypertouch and Intuit have their principal places of business, and where Azoogle, Quicken Loans and Intuit employ counsel appearing in this action.

_____
[3] Though not mentioned in the Complaint, Quicken Loans is a wholly-owned subsidiary of a Rock Holdings.

12.     The Complaint also names Defendants Does 1-30.  Pursuant to 28 U.S.C. §1441(a), the citizenship of these defendants is disregarded.

13.     This is a civil action over which the Court has original jurisdiction under the provisions of 28 U.S.C. §1332 and may be removed to this Court by the Defendants pursuant to the provisions of 28 U.S.C. §1441(a) because it is a civil action between citizens of different states and the matter in controversy herein exceeds the sum or value of $75,000, exclusive of interest and costs.

## The Other Requirements for Removal Are Met

14.     This Notice of Removal is being filed within thirty (30) days of service on the first-served defendant.   Thus, this Notice of Removal is timely filed under 28 U.S.C. §1446(b).

15.     Removal to this Court is proper as the Superior Court of the State of California, County of Los Angeles, where this action was originally filed, is located within this district.

16.     Counsel for Azoogle certifies that it will file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Los Angeles, and give notice of same to counsel for Hypertouch.

17.     Defendants Quicken Loans and Intuit join in Azoogle's removal of this action.

///
///
///
///
///
///
///

NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. § 1441(a) (DIVERSITY)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Respectfully Submitted,

DATED:  June 6, 2008                KRONENBERGER BURGOYNE, LLP

By: _____

Henry M. Burgoyne, III
Attorney for Defendant
AzoogleAds.com, Inc.

DATED:  June ___, 2008             BINGHAM MCCUTCHEN LLP

By: _____

James G. Snell
Attorney for Defendant
Quicken Loans, Inc.

DATED:  June ___, 2008             DLA PIPER US LLP

By: _____

Pamela K. Fulmer
Attorney for Defendant
Intuit Inc.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Respectfully Submitted,

DATED: June ___, 2008        KRONENBERGER BURGOYNE, LLP

By: _____

   Henry M. Burgoyne, III
   Attorney for Defendant
   AzoogleAds.com, Inc.

DATED: June 6, 2008          BINGHAM MCCUTCHEN LLP

By: _____

   James G. Snell
   Attorney for Defendant
   Quicken Loans, Inc.

DATED: June ___, 2008        DLA PIPER US LLP

By: _____

   Pamela K. Fulmer
   Attorney for Defendant
   Intuit Inc.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

CASE NO.

6

1   Respectfully Submitted,

2

3   DATED: June ___, 2008                    KRONENBERGER BURGOYNE, LLP

4

5                                            By: _____

6                                                Henry M. Burgoyne, III
7                                                Attorney for Defendant
                                                 AzoogleAds.com, Inc.
8

9   DATED: June ___, 2008                    BINGHAM MCCUTCHEN LLP

10

11                                           By: _____

12                                               James G. Snell
13                                               Attorney for Defendant
                                                 Quicken Loans, Inc.
14

15

16  DATED: June _6_, 2008                    DLA PIPER US LLP

17

18                                           By: _____

19                                               Pamela K. Fulmer
20                                               Attorney for Defendant
                                                 Intuit Inc.
21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

CASE NO.                          6      **NOTICE OF REMOVAL OF ACTION UNDER**
                                         **28 U.S.C. § 1441(a) (DIVERSITY)**

Exhibit A

COPY

1 | Lawrence P. Riff (State Bar No. 104826)
lriff@steptoe.com
2 | Lynn R. Levitan (State Bar No. 176737)
llevitan@steptoe.com
3 | **STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 700
4 | Los Angeles, California 90071
Telephone: (213) 439-9400
5 | Facsimile: (213) 439-9599

6 | Attorneys for Plaintiff
HYPERTOUCH, INC.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 1 5 2008

John A. Clarke, Executive Officer/Clerk

By A. Williams, Deputy

INITIAL CASE MANAGEMENT REVIEW
AND CONFERENCE

AUG 0 4 2008

TERRY B. FRIEDMAN

Dept. J 8:45an

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| HYPERTOUCH, INC., a California corporation, | **SC097839** |
| Plaintiff, | Case No. |
| vs. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** – Violation of **California Business & Professions Code §§ 17529.5 and 17200** *et seq.* |
| AZOOGLE, INC., a Delaware corporation, INTUIT, INC., a Delaware corporation, QUICKEN LOANS, INC., a Delaware corporation, ROCK HOLDINGS, INC., a Delaware corporation, and DOES 1-30, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Hypertouch, Inc. ("Hypertouch") brings this action seeking damages and injunctive relief against Azoogle, Inc. ("Azoogle"), Intuit, Inc. ("Intuit"), Quicken Loans, Inc., ("Quicken Loans"), Rock Holdings, Inc. ("Rock Holdings"), and Does 1-30 for violation of California Business & Professions Code §§ 17529.5 and 17200 *et seq.*, and alleges as follows:

1. Hypertouch is a California-based Internet Service Provider, or "ISP."

2. As an ISP, Hypertouch receives and delivers thousands of e-mails each day to its individual and business subscribers, as well as offering a variety of other services, including the hosting of websites.

3. Hypertouch is an electronic mail service provider, that is, it is an intermediary in sending and receiving electronic mail and provides to end users of this electronic mail service the ability to send or receive electronic mail.

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4. Hypertouch® is a registered federal trademark (#2328650 and #2367595) for computer services, first used in commerce in 1998.

5. Hypertouch owns and operates mail servers, web servers, and DNS (Domain Name Service) servers that are connected to and accessed over the Internet.

6. In addition to legitimate e-mail, Hypertouch's mail servers receive, each day, thousands of unwanted and unsolicited commercial e-mails. Such unsolicited commercial e-mail is known by various names, including "UCE" or "spam" and accounts for over 95% of messages sent to Hypertouch's mail servers.

7. Congress, in the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM" Act), moved to regulate unsolicited commercial e-mail. While Congress legalized spam, it demanded transparency and accountability: thus, federal law and the laws of 34 States, prohibit spam that contains false or misleading information.

8. In CAN-SPAM, Congress made comprehensive legislative findings on the burdens posed by spam (15 U.S.C. § 7701(a)):

    a. "The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail. Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in one or more respects."

    b. "The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both."

    c. "The receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of

electronic mail to the recipient."

d. "The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure."

e. "Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail."

f. "Many senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages."

9. Likewise, the California Legislature in enacting that state's anti-spam law, California Business & Professions Code §§ 17529 *et seq.*, found that (§ 17529(a)-(m)):

a. "Roughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam."

b. "The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age."

c. "Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying."

d. "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States

population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)."

e. "Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail."

f. "Spam filters have not proven effective."

g. "Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate."

h. "The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone."

i. "Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production."

j. "There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore."

k. "The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."

l. "In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems."

m. "Because of the above problems, it is necessary that spam be prohibited . . . ."

10. In an April 2003 report entitled, *False Claims in Spam*, "the Federal Trade Commission (FTC) found that 66 percent of all spam contains some kind of false, fraudulent, or misleading information,

either in the e-mail's routing information, its subject line, or the body of its message." S. Rep. No. 108-102 ("CAN-SPAM Act of 2003"), at 2. The FTC found that "one-third of all spam contains a fraudulent return e-mail address that is included in the routing information (known as the 'header') of the e-mail message." *Id*. at 3. In the Senate Report, Congress also found that falsified headers "not only trick ISP's increasingly sophisticated filters," but "lure consumers into mistakenly opening messages from what appears to be people they know." *Id*. In addition, Congress found that senders use false or misleading subject lines to "trick the recipient into thinking that the e-mail sender has a personal or business relationship with the recipient." *Id*. at 4.

## PARTIES AND JURISDICTION

11. Plaintiff Hypertouch is a California corporation, with its principal place of business in Menlo Park, California. Hypertouch is developing next generation haptic peripherals. None of Hypertouch's peripherals that are in development have been released to market and so are currently protected trade secrets. Hypertouch also provides Internet services and consulting.

12. On information and belief, Defendant Azoogle is a Delaware corporation with its principal place of business in New York, NY. Hypertouch is further informed and believes that, at all times mentioned herein, Defendant Azoogle has conducted business in, and under the laws of, the State of California, including through its office at 1051 East Hillsdale Blvd, Suite 520, Foster City, California 94404.

13. On information and belief, Defendant Intuit is a Delaware corporation with its principal place of business at 2632 Marine Way, Mountain View, CA 94043. Hypertouch is further informed and believes that, at all times mentioned herein, Defendant Intuit has conducted business in, and under the laws of, the State of California.

14. On information and belief, Defendant Quicken Loans is a Delaware corporation with its principal place of business in Livonia, MI. Hypertouch is further informed and believes that, at all times mentioned herein, Defendant Quicken Loans has conducted business in, and under the laws of, the State of California.

15. On information and belief, Defendant Rock Holdings is a Delaware corporation with its principal place of business in Livonia, Michigan. Hypertouch is further informed and believes that, at all

times mentioned herein, Defendant Rock Holdings has conducted business in, and under the laws of, the State of California, including through its office at 3525 Eastham Dr., Ste. A, Culver City, CA 90232.

16.     Does 1-30 are persons to be identified.  Plaintiff is unaware of the true names and capacities of these defendants and therefore sues by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities once ascertained.  Hypertouch is informed and believes and therefore alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that Hypertouch's injuries as herein alleged were proximately caused by such defendants. These fictitiously-named defendants, along with Azoogle, Intuit, Quicken Loans, and Rock Holdings are herein referred to collectively as "Defendants."

17.     Plaintiff is informed and believes that Defendants conspired to commit the acts described herein, or alternatively, aided and abetted others in the performance of the wrongful acts hereinafter alleged. All Defendants (including Does 1-30) authorized, participated in, acquiesced to, consented to and/or were the agents of another defendant in the acts alleged, and initiated, conspired, assisted, participated in, or otherwise encouraged the conduct alleged in furtherance of one or more conspiracies to send, advertise in and/or initiate the e-mails.  The transmissions of the e-mails identified herein were actions that each of the Defendants authorized, controlled, directed, or had the ability to authorize, control or direct, and were actions for which each of the Defendants is liable.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18.     Hypertouch is an "electronic mail service provider" as defined in California Business & Professions Code § 17529.1(h).  Hypertouch provides and enables access to the Internet for multiple users.

19.     Hypertouch owns and operates interactive computer services that enable its customers to, among other things, access the Internet, access Hypertouch-hosted Internet services and exchange e-mail. Hypertouch owns and maintains computers and other equipment, including specialized computers or "servers" that process e-mail messages and otherwise support its e-mail services.  Hypertouch maintains the e-mail-related equipment in the County of San Mateo, California.

20.     Each of Hypertouch's servers provides one or more services that enable users to access content over the Internet.  Hypertouch's clients could not access their e-mail without Hypertouch's services. No user anywhere on the Internet can send e-mail to Hypertouch's clients nor view the web pages of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Hypertouch's clients without accessing the servers provided by Hypertouch and using the services those servers provide.

21. All e-mail messages relevant to this litigation were sent to e-mail addresses ordinarily accessed from computers located in this state.

22. Spam is by far Hypertouch's biggest customer service issue. Hypertouch has suffered injury and lost money from its high spam load that includes the Defendants' spam. This harm and cost includes, for example:

    a.    Decreased mail server and DNS server responsiveness;

    b.    Multiple mail server and DNS server crashes;

    c.    Mail server hardware and software replacements and upgrades to handle the increased e-mail load;

    d.    Increased network bandwidth utilization;

    e.    Supplemental server, software and business broadband line purchases to handle the increased e-mail load.

23. Defendants and/or their agents transmitted or caused the transmission of commercial e-mail advertisements from California and to e-mail addresses in California and other states.

24. Defendants and/or their agents also arrange with other companies to have commercial e-mail advertisements from California and to e-mail addresses in California and other states.

25. Defendants and/or their agents advertised in, sent, directed, assisted, encouraged, conspired in, procured, initiated, participated in and/or facilitated the sending of tens or hundreds of thousands of e-mails to e-mail addresses both in California and other states advertising various goods and services.

26. Defendants and/or their agents paid others based on the number of people who "clicked-through" the links in those commercial e-mail advertisements and thereby were directed to Defendants' or third-party advertiser's website and/or numbers of people who make a purchase, participate in an "incentive" program or otherwise become a customer of the products or services offered.

27. Defendants and/or their agents tracked the results of the transmissions and all related sales and services, in part so that the bulk e-mailer whose e-mail lured the recipient to click through to the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

advertiser site could be paid accordingly. This tracking generated records that identify the participants in these activities, and the related times, dates, quantities and payment amounts.

28.     Defendants and/or their agents advertised in commercial e-mail advertisements sent via intermediary and/or third-party computers and networks that were located in California to e-mail addresses both in California and other states.

29.     Defendants and/or their agents advertised in and sent commercial e-mail advertisements to Hypertouch in California, and such e-mails continue to arrive to this day.

30.     Defendants have engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising and other acts prohibited by California law that proximately caused injury in fact and the loss of money to Plaintiff.

31.     Between April 15, 2004 and continuing to the present, Hypertouch received over 380,000 e-mails attributable to Defendants. (Attached as Exhibits 1-7 are true and correct sample copies of Defendants' e-mail received by Plaintiff.)

32.     The e-mails received by Hypertouch contained or were accompanied by a third-party's domain name without the permission of the third party.

33.     The e-mails received by Hypertouch contained or were accompanied by falsified, misrepresented and/or forged header information.

34.     The e-mails received by Hypertouch had subject lines designed to and which would be likely to mislead a recipient regarding the contents or subject matter of the message.

35.     Defendants and/or their agents also hired bulk e-mail senders ("spammers") notorious for sending illegal spam to generate leads to which they responded, including by phone and e-mail. Generation of leads resulted in payments from Defendants to ad networks and to spammers. Data contained in the e-mails allowed Defendants and/or their agents to identify which ad networks and other collaborators in the spam e-mails were responsible for generating the leads.

36.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information. This includes, for example, that the e-mail arrived at the Hypertouch servers containing or accompanied by false information concerning the identities of the computers sending the e-mails. When an e-mail arrives, the transmitting computer sends a

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

"HELO," which is a parameter typically showing the sending computer's name and/or IP address so as to identify to the recipient computer that is transmitting the e-mail and where it came from. In the case of these e-mails, the identities of the transmitting computers given in the HELO did not match the IP addresses of the transmitting computers. In other words, Defendants and/or their agents falsified the identities of the transmitting computers by providing a HELO identifier that did not match the actual IP address of the transmitting computer. This is done to prevent or impair the identification of the actual sender of the spam and/or prevent or impair the identification of the e-mail as unwanted spam. These e-mails are recognizable as belonging to Defendants because the content in the e-mails advertises the Defendants' brands, such as "ExtendedWarrantySavings.com" or "LowRateAdvisors.com," because clicking on the link in the e-mail leads to a Defendant site, such as qckjmp.com/azjmp.com, and/or because filing out a mortgage request results in the Defendant making contact via email and/or telephone.

    a.    For example in Exhibit 1, the sender used a computer at IP address 222.132.172.2, but that machine identified itself as "69.33.227.200" which is in fact Hypertouch's mail server's own IP address. Furthermore, the sender claims to be "From:" Barksdale US Air Force base in Louisiana that is sending mortgage spam supposedly via a Cornell University mail server using a Chinese IP address. The false identification characteristics were designed to mask the identity of the sender of the e-mails and to make it impossible to find or contact the sender. The spam advertised a mortgage inquiry webpage of www.b3mort.net.

    b.    In another example, in Exhibit 2, Hypertouch's mail server received a rejected/bounced spam from another ISP where the spammer forged a hypertouch.com email address in the "From:" line. This false identification was designed to mask the identity of the sender of the e-mails and to make it impossible to find or contact the sender. The false From: line is also designed to direct a bounce back not to the sender, but to an innocent third party's mail servers such as Hypertouch's. The spam advertised a mortgage inquiry webpage of www.b3mort.com.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

c.  In a third example, in Exhibit 3, the sender used a computer at IP address 220.173.17.115, but that machine identified itself as "69.33.227.203" which is in fact Hypertouch's mail server's own IP address. Furthermore, in this example's case even the Date: line is false. This false identification was designed to mask the identity of the sender of the e-mails and to make it impossible, to find or contact the sender. The spam advertised a mortgage inquiry webpage of www.wumort.net.

d.  In a fourth example, in Exhibit 4, the sender falsified multiple lines in the e-mail's header to make it appear the e-mail was sent "From:" someone named "Geneva" at Hypertouch. Among the false header lines include fake entries claiming to show reception by mail2.hypertouch.com. This false identification was designed to mask the identity of the sender of the e-mails and to make it impossible to find or contact the sender. The spam advertised a mortgage inquiry webpage of formsfresh.com.

e.  Test mortgage leads generated by completing the mortgage application at the link provided in the emails which led to domains including www.b3mort.com and www.wumort.net resulted in a direct response from Quicken Loans. For example, Plaintiff received an e-mail from Quicken Loans with the subject line of "Subject: QuickenLoans has received your Inquiry |" In the e-mail, Quicken Loans cited a Mortgages4less as the source of the loan request. Hypertouch is informed and believes that at least seven months prior to this contact Quicken Loans was aware that Mortgages4less was generating leads through illegal spam.

f.  In a fifth example, advertising Metareward's website (via Azoogle's ackjmp.com), the sender used a computer at IP address 204.13.20.2, but that machine identified itself as "mailpool.jriad.info," which the spammer's own DNS server confirmed resided at a completely different IP address. This false identification was designed to mask the identity of the sender of the e-mails and to make it more difficult, if not impossible, to find or contact the sender.

g.  The domain name jriad.info used by the sender identified in paragraph 36(f) was falsely registered using false and misleading owner information, for this e-mail was in

10

fact sent by the "Ralsky spam gang," located in West Bloomfield, MI. At the time, Alan Ralsky was widely acknowledged as the most notorious spammer in the world, for years ranked in the number one position of the Spamhaus Project's ROKSO Top Ten List. The members of the Ralsky spam gang were indicted by the Department of Justice on January 3, 2008. Statement of the Department of Justice, *Alan Ralsky, Ten Others, Indicted in International Illegal Spamming and Stock Fraud Scheme*, *available at* http://www.usdoj.gov/criminal/cybercrime/ralskyIndict.htm. The 41-count indictment for "a wide-ranging international fraud scheme involving the illegal use of bulk commercial e-mailing, or 'spamming'" was announced in a statement from the Department of Justice which commented: "The flood of illegal spam continues to wreak havoc on the online marketplace and has become a global criminal enterprise. It clogs consumers' e-mail boxes with scams and unwanted messages and imposes significant costs on our society. This indictment reflects the commitment of the Department of Justice to prosecuting these spamming organizations wherever they may operate." The notorious behavior of the Ralsky gang was well known over the last five years to companies involved in the e-mail marketing field.

h.  In a sixth example, the sender used computers at IP address 72.11.147.58, but that identified itself falsely as "endogenter.com," which was a falsely registered domain name. This example email advertises ringtones at "No Charge," using images hosted on Azoogle's website at http://i.1100i.com/. On November 7, 2007, the Attorney General of Florida announced an agreement with Azoogle for a $1,000,000 fine stemming from an investigation "into the marketing of ringtones and other cell phone products. Investigators determined that consumers, usually children or teenagers who were responding to "free" cell phone ringtone offers, were often enrolled into subscription plans without their knowledge or consent." (*See* http://myfloridalegal.com/__852562220065EE67.nsf/0/86244EECC07CD59C8525738C005DCDDF?Open&Highlight=0,azoogleads.)

i.     In a seventh example, the sender used computers at IP address 72.11.146.11, but that identified itself falsely as "cgwcorps.com," which was a falsely-registered domain name. This example shows Azoogle advertising its web property SpicyMint, using images hosted on Azoogle's website at http://i.1100i.com/.

37.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information because the e-mails contained one or more fictitious, false and/or misleading names in the "From:" lines of the message headers. Defendants and/or their agents attempted to mislead recipients by using different fictitious people's names in the "From:" lines of the message headers. For example, on April 16, 2005, the Defendants and/or their agents sent over 100 messages each with a From: line using a different quoted name consisting of 6-11 random characters such as "moreomega."

38.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information because the senders used false domain names in the sender addresses. Different e-mails sent with different domain names were designed by Defendants and/or their agents to mislead the recipients of the messages, mask the identity of the true sender of the e-mail, and to deceive recipients and spam filters into *not* blocking the messages. (*See* Exhibits 1-7).

39.     The Federal Trade Commission in its December 2005 report to Congress, identified sending e-mails with many domain names and IP addresses as a deceptive means of avoiding ISPs' spam filters. *See Effectiveness and Enforcement of the CAN-SPAM Act: A Federal Trade Commission Report to Congress*, at A-3 & n.74 (December 2005). By using multiple domain names and IP addresses, Defendants were able to disguise the actual source of the e-mail, and to trick ISPs by "spreading out" the total volume of e-mail, thus reducing the volume sent from *each* domain name and IP address, and thus preventing spam filters which react to large volumes of e-mail from a single source.

40.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information because the e-mails included domain names which were registered to false, non-existent entities, as well as entities using false addresses and/or false telephone numbers. For example one particular spammer of the Defendants employed over three

12

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

thousand different domain names using fake names, addresses and/or proxy services in the registration record (the "Whois data") for those domains to conceal the identity of the owner.

41.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing a reply address that was not and/or could not be functional because the return address was connected with an invalid domain name or non-working account. (*See, e.g.*, Exhibit 5.)

42.     Plaintiff received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged information in the subject lines. This includes, for example, stating that the e-mail recipient had won a "Free" gift such as a "Complementary Plasma TV" although in order potentially to receive any "free" item, the unknowing recipient had to sign up for multiple sponsoring offers, and incur costs and obligations. The subject lines were designed by Defendants and/or their agents to deceive or attempt to deceive the recipient, and were likely to mislead a recipient.

43.     Although the federal CAN-SPAM Act requires all commercial e-mail to have an opt-out mechanism, neither it, nor California law, make it a requirement for end users to opt-out. To the contrary, major ISPs such as Microsoft, Earthlink, AT&T, Yahoo, Comcast, Verizon, Charter, NetZero, and Qwest, warn against attempting to "opt out" of spam because providing one's e-mail address to spammers often subjects the recipient to more e-mail. (*See* Exhibit 8.) Indeed, for example, some of the Ralsky spam referenced above was sent to e-mail addresses submitted to the opt-out links of other spam.

44.     Attempting to use Azoogle's own opt-out mechanism directly to request that it cease sending e-mail was ineffective and in fact subjected Plaintiff to new, additional spam as Plaintiff's e-mail address was given to other spammers. A unique e-mail address was submitted to Azoogle's opt-out mechanism. In just over two months, more than 1,000 new spam were sent to that email address – an address never before nor since used anywhere else.

45.     These e-mails have harmed and continue to harm Hypertouch by interfering with Hypertouch's business operations, requiring the application of time, money and technological resources to handle the spam. Among the adverse affects to Hypertouch that high spam loads have caused are decreased server response and crashes, higher bandwidth utilization, forced upgrades of expensive hardware and software, frustration of subscribers, and loss of staff time. To the extent Defendants' thousands of e-mails consume disk space, drain the processing power of Hypertouch's computer equipment, and stress

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Hypertouch's network infrastructure, those resources are not available to serve subscribers or perform other tasks. Spam is Hypertouch's subscribers' number one complaint.

## FIRST CAUSE OF ACTION FOR VIOLATION OF

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17529.5

### (Against All Defendants)

46.　Plaintiff hereby repeats and re-alleges paragraphs 1 through 45 set forth above as if fully set forth herein.

47.　Under California Business & Professions Code § 17529.5(a), it is "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address" where that e-mail advertisement "contains or is accompanied by a third-party's domain name without the permission of the third party," "contains or is accompanied by falsified, misrepresented, or forged header information," or "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

48.　Defendants and/or their agents sent and advertised in commercial e-mail advertisements sent from California and received by Hypertouch in California at e-mail addresses normally accessed from computers in the state.

49.　Between at least April 15, 2004 and the present, inclusive, Defendants sent or caused to be sent at least 380,000 false and/or deceptive commercial e-mail advertisements to Plaintiff's servers in violation of California Business & Professions Code § 17529.5(a)(1), (2) and/or (3).

50.　The e-mail advertisements received from Defendants and/or their agents contained or were accompanied by a third-party's domain name without the permission of the third party. For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(1).

51.　The e-mail advertisements received from Defendants and/or their agents contained and/or were accompanied by falsified, misrepresented, or forged header information. For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(2).

52.　The e-mail advertisements received from Defendants and/or their agents contained subject lines that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances,

14

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

about a material fact regarding the contents or subject matter of the message. For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(3).

53. Defendants conspired with others to send the unlawful commercial e-mail advertisements.

54. Each e-mail is a separate violation.

55. As a proximate result of the unlawful actions of Defendants and/or their agents, Plaintiff suffered damages and is entitled to damages under California Business & Professions Code § 17529.5(b)(1)(B) of $1,000 per e-mail, Hypertouch's actual damages, and its attorneys' fees.

## SECOND CAUSE OF ACTION FOR VIOLATION OF
## CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *et seq.*
### (Against All Defendants)

56. Plaintiff hereby repeats and re-alleges paragraphs 1 through 55 set forth above as if fully set forth herein.

57. Defendants have engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising and other acts prohibited by California Business & Professions Code §§ 17200 *et seq.*

58. Hypertouch is forced to pay monthly for a second additional broadband Internet connection in order to handle the increased spam load its servers are receiving, including the Defendants' spam, causing injury in fact and the loss of money, and as such Plaintiff may seek injunctive relief under California Business & Professions Code § 17204.

59. Hypertouch asserts a claim against Defendants for injunctive relief and restitution under the California Business & Professions Code §§ 17200 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Hypertouch respectfully requests that this Court enter judgment against Defendants, including damages awarded jointly and severally in an amount to be proven but substantially in excess of this Court's subject matter jurisdiction, exclusive of interest and costs:

A. Awarding Hypertouch damages, including statutory damages under California Business & Professions Code § 17529.5(b)(1)(B) of $1,000 per e-mail and Hypertouch's actual damages;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

B.     Awarding Hypertouch its attorneys' fees and costs as provided under California Business & Professions Code § 17529.5(b)(1)(C);

C.     Awarding Hypertouch restitution for expenses incurred as a result of Defendants' violation of California Business & Professions Code §§ 17200 *et seq.*;

D.     Damages for civil conspiracy for the unlawful sending of commercial e-mail advertisements;

E.     Enjoining temporarily and permanently Defendants, their officers, agents, representatives, servants, employees, attorneys, successors, assignees, and all others in active concert or participation with Defendants, from initiating, conspiring, or assisting in the sending of false or misleading commercial e-mail under California Business & Professions Code §§ 17203, 17204 and the inherent equitable powers of this court; and

F.     Awarding such other relief as this Court considers just and proper.

Dated:  April 15, 2008

Respectfully submitted,

STEPTOE & JOHNSON LLP

By:
Lawrence P. Riff
Lynn R. Levitan
STEPTOE & JOHNSON LLP
633 W. 5th St., Suite 700
Los Angeles, CA 90071
Tel: (213) 439-9400
Fax: (213) 439-9599

Attorneys for Plaintiff HYPERTOUCH, INC.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## JURY DEMAND

Plaintiff Hypertouch demands a trial by jury.

STEPTOE & JOHNSON LLP

By: _____
Lawrence P. Riff
Lynn R. Levitan
STEPTOE & JOHNSON LLP
633 W. 5th St., Suite 700
Los Angeles, CA 90071
Tel: (213) 439-9400
Fax: (213) 439-9599

Attorneys for Plaintiff HYPERTOUCH, INC.

**EXHIBIT 1**

Return-Path: <jgkugp@barksdale.af.mil>
Received: from [69.33.227.200] (HELO altmail.hasit.com)
  by mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.3.6)
  with SMTP id 59666766 for [DELETED]; Mon, 24 Oct 2005 17:44:46 -0700
Received: from [222.132.172.2] (HELO 69.33.227.200)
  by altmail.hasit.com (Stalker SMTP Server 1.8b9d14)
  with SMTP id S.0035747958; Mon, 24 Oct 2005 17:44:45 -0700
Received: with ECARTIS (v1.0.0; gutenberg magnanimous-xfs); Mon, 24 Oct 2005 22:40:32 -0300
Received: from postoffice6.mail.cornell.edu (minerva.palate.cornell.edu [drab.1])
  by oss.sgi.com (8.13.0/8.13.0) with ESMTP id jrepairmanIWZC0atom
  for <jgkugp@barksdale.af.mil>; Tue, 25 Oct 2005 05:38:32 +0400
Message-ID: <eyelash9.jgkugp@barksdale.af.mil>
Return-Path: <caveman-milord@nic.blew.fi>
X-Envelope-To: <"|/home/httpd/zmailer/html/mhalist/input.sh"> (uid 0)
X-Orcpt: rfc822;zmailer-log
Date: Mon, 24 Oct 2005 19:44:32 -0600
Message-ID: <200301011.9jgkugp@barksdale.af.mil>
From: "Alfonso Copeland" <jgkugp@barksdale.af.mil>
To: [DELETED]
Subject: Extending Home Loans for the USA!

Hi,

I sent you an email last week and need to confirm everything now.
Please read the info below and let me know if you have any questions.
We are accepting your mortgage refinance application.  If you have poor credit,
it is ok.  You can get a refinance loan for a rock-bottom payment.
Approval process will take one minute.  Just visit the link below and
fill in the short form.

http://www.b3mort.net

Best Regards,

Alfonso Copeland
Financial Officer


-------------------------------------------------------------
No more:

www.b3mort.net/book.php

EXHIBIT 1 PAGE 18

**EXHIBIT 2**

```
Return-Path: <>
Received: from [69.33.227.203] (HELO mail.hasit.com)
   by mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.3.6)
   with SMTP id 59758870 for [DELETED]; Tue, 25 Oct 2005 10:13:06 -0700
Received: from mail.theunixhostingpeople.com ([216.109.76.4] verified)
   by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
   with SMTP id S.0017032595 for <[DELETED]>; Tue, 25 Oct 2005 10:13:05 -0700
Received: (qmail 5347 invoked for bounce); 25 Oct 2005 20:32:39 -0000
Date: 25 Oct 2005 20:32:39 -0000
From: MAILER-DAEMON@mail.theunixhostingpeople.com
To: [DELETED]@hypertouch.com
Subject: failure notice
Message-Id: <S.0017032596@mail.hasit.com>


Hi. This is the qmail-send program at mail.theunixhostingpeople.com.
I'm afraid I wasn't able to deliver your message to the following addresses.
This is a permanent error; I've given up. Sorry it didn't work out.

<webmaster@idsa-india.org>:
Sorry, no mailbox here by that name. vpopmail (#5.1.1)

--- Below this line is a copy of the message.

Return-Path: <[DELETED]@hypertouch.com>
Received: (qmail 5341 invoked from network); 25 Oct 2005 20:32:36 -0000
Received: from unknown (HELO 216.109.76.4) (61.250.99.225)
   by mail.theunixhostingpeople.com with SMTP; 25 Oct 2005 20:32:36 -0000
Received: (from tomcat@localhost)
         by 61.250.99.225 (8.12.8/8.12.8/Submit) id j6CHmn0V312363
         for webmaster@idsa-india.org; Tue, 25 Oct 2005 12:09:11 -0600
Message-ID: <044c194d.0956048@216.109.76.4>
Date: Tue, 25 Oct 2005 12:09:11 -0600
From: "Cathleen Malone" <[DELETED]@hypertouch.com>
X-Mailer: MIME-tools 5.494 (Entity 5.747)
MIME-Version: 1.0
To: webmaster@idsa-india.org
X-Spam-Score:  (-2.121) BAYES_00
X-Scanned-By: MIMEDefang 2.52 on 61.250.99.225
X-Scanned-By: SpamAssassin 3.158278, File::Scan 0.27, Archive::Zip 1.04
X-Recipient: <webmaster@idsa-india.org>
Subject: Low mortgage ratee approvall
Content-Type: multipart/related;
 boundary="-----------AttPart_18827438==.OLA"

This is a multi-part message in MIME format.
--------------AttPart_18827438==.OLA
Content-Type: text/html; charset=ISO-8859-1
Content-Transfer-Encoding: 7bit
```

| |
|---|
| Hello,<br>We tried contacting you awhile ago about your low interest mortgage rate. You have been selected for our lowest rate in years...<br>You could get over $420,000 for as little as $400 a month! Bad credit, Bankrupcy? Doesn't matter, low rates are fixed no matter what!<br><br>**GET A FREE, NO CONSULTATION QUOTE IN MINUTES!**<br><br>Best Regards,<br>Joan Hubert |

it's bernini on bluebush may truant not expound or hitachi it aggressive a snakeroot or vincent but woo it handymen some excretion but dadaism ! people or twill Or maybe not

EXHIBIT 2 PAGE 19

From ???@??? Tue Oct 25 14:41:12 2005
Return-Path: <>
Received: from [69.33.227.203] (HELO mail.hasit.com)
   by mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.3.6)
   with SMTP id 59758870 for [DELETED]; Tue, 25 Oct 2005 10:13:06 -0700
Received: from mail.theunixhostingpeople.com ([216.109.76.4] verified)
   by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
   with SMTP id S.0017032595 for <[DELETED]>; Tue, 25 Oct 2005 10:13:05 -0700
Received: (qmail 5347 invoked for bounce); 25 Oct 2005 20:32:39 -0000
Date: 25 Oct 2005 20:32:39 -0000
From: MAILER-DAEMON@mail.theunixhostingpeople.com
To: [DELETED]@hypertouch.com
Subject: failure notice
Message-Id: <S.0017032596@mail.hasit.com>

Hi. This is the qmail-send program at mail.theunixhostingpeople.com.
I'm afraid I wasn't able to deliver your message to the following addresses.
This is a permanent error; I've given up. Sorry it didn't work out.

<webmaster@idsa-india.org>:
Sorry, no mailbox here by that name. vpopmail (#5.1.1)

--- Below this line is a copy of the message.

Return-Path: <[DELETED]@hypertouch.com>
Received: (qmail 5341 invoked from network); 25 Oct 2005 20:32:36 -0000
Received: from unknown (HELO 216.109.76.4) (61.250.99.225)
   by mail.theunixhostingpeople.com with SMTP; 25 Oct 2005 20:32:36 -0000
Received: (from tomcat@localhost)
            by 61.250.99.225 (8.12.8/8.12.8/Submit) id j6CHmn0V312363
            for webmaster@idsa-india.org; Tue, 25 Oct 2005 12:09:11 -0600
Message-ID: <044c194d.0956048@216.109.76.4>
Date: Tue, 25 Oct 2005 12:09:11 -0600
From: "Cathleen Malone" <[DELETED]@hypertouch.com>
X-Mailer: MIME-tools 5.494 (Entity 5.747)
MIME-Version: 1.0
To: webmaster@idsa-india.org
X-Spam-Score:  (-2.121) BAYES_00
X-Scanned-By: MIMEDefang 2.52 on 61.250.99.225
X-Scanned-By: SpamAssassin 3.158278, File::Scan 0.27, Archive::Zip 1.04
X-Recipient: <webmaster@idsa-india.org>
Subject: Low mortgage ratee approvall
Content-Type: multipart/related;
 boundary="------------AttPart_18827438==.OLA"

This is a multi-part message in MIME format.
--------------AttPart_18827438==.OLA
Content-Type: text/html; charset=ISO-8859-1
Content-Transfer-Encoding: 7bit

<!DOCTYPE html PUBLIC "-//W3C//DTD HTML 4.01 Transitional//EN">
<html>
<head>
  <meta content="text/html;charset=ISO-8859-1" http-equiv="Content-Type">
</head>
<body bgcolor="#ffffff" text="#000000">
<a href="http://www.b3mort.com"><img alt=""
src="cid:1.0.0.41.0.16953734005409.53744449@brook.msn.com.5"></a><br>
it's bernini on bluebush may truant not expound
or hitachi it aggressive a snakeroot or vincent
but woo it handymen some excretion but dadaism
! people or twill Or maybe <a
 href="http://www.b3mort.com">not</a><br>

EXHIBIT 2 PAGE 20

```
<br>
</body>
</html>
```

--------------AttPart_18827438==.OLA
Content-Type: image/gif;
 name="clockwatcher.9.gif"
Content-Transfer-Encoding: base64
Content-ID: <1.0.0.41.0.16953734005409.53744449@brook.msn.com.5>
Content-Disposition: inline;
 filename="clockwatcher.9.gif"

R0lGODlh5gHOALMAAP/////MzP+Zmf9mZv8zM/8AAMzM/8zMzMyZ/5mZ/5mZmZlmzGYzzDMz
MzMAzAAAACH5BAAAAAAALAAAAADmAc4AAAT/EMhJq7046827/2AojmRpnmiqrmzrvnAsz3Rt
33iu73zv/8CgcEgsGo/IpHLJbDqf0Kh0Sq2CDo+sIvs4ZLaPCthKLpvP6BPWu95sLe+0fE6v
T9ttTZyyt/v/glE4eF0AWFyFEn2KYRMNiA2CkpOUlRiHXAd5homLAHsNkY6ilqWmp2iEmoiZ
jHCNAKEUsqi1trdMqptisBOgpLHAuMPExTm6iZxen72uErTPwsbT1NVqXGBdmFIe2VmMiM+C
s9LW5ufoO9Dp7O3u7/Dx8vP09fb3+Pn6+/z9/9AAwocSLGgwYMI02DKtgzGug1apOyqMdbC
okflhmCcE5GFJz+q/0R8VPFAgYyHIUr+GYkBZRGXIFQWkakDZouJLEKGYlmC5gubHXzS4WkB
aBCjHIQGUWoDaQqcK0JuS/aKi7gHobBeBcbKJICuGaZ2Y8Ws5LerWtGSSAvsVmwRMyw6BWebt
bNEsWbU+4hlpYscL29hgy7SlYtlmwWaNy4Dl61RtrBpWTbsXL1qtfmU2DjuYW92yoPdmzUjB
Z9eFrSxaBWe4MqnKmLV0BCuWU+qbZresagjVmeJl0KCZLjyBqblJWPq8GfMrg6zhEpRuOrR7
D09astY992q8gtRCzHt5Cg7Mack8a6ZTxRCHvPa+3L1+lc9Z8AHIYeKA0ks6uvzhOn0h3v83
zY1CTnQq5Vaabsg0V0ttTuUHGynp8IOaScBMS598l6+HHjG8PwQYfBtllo4p1iB2Y2Hvzbcgh
lolVBl4jHlYQ3ISkmZZleiZSCM5q7pU3YosuanDigB8mmZgHNAEYoWSqVQhieTgW2ZaO3FDw
lArJmbXbB+OVIxx9RRo3kYf6wcJiNERaUCJvDnaB4gahYCckkWbuGKeMY/mmplFsBvWfAuhB
BieUvrX3Wp0HajZoB1326Ut+NKrZXwVN0nfek24gqeSabmpKppZZHhdDpKam+sqnYq4laqYc
wolmpQZmt2ibeJpEk3r2HWZXS4wuyWaCecaIJ4NJ1qiisMwuWJz/SWLxGqUzQTaqK6zdccLç
rKAFKuizzqLaqZSsrngnrsP1aN+WJYhbmx5niejlYmxl+Glrn2WTzbyv8fXcZsXJFG1nVBHF
rLwlgjHqW43tOaNsBJlVy2llkzgYfYTAKOBgsKVVMcT/ZctwQ5+xhtdijAHMIrjskaXvahP3
y9eVf9EWWYM+JtSCwU7Zwe4RP+ss9KQwt5QWJYFFQd3QTDft9NNQRy311FRXbfXVWGet9dZc
d+31PQQvDlJhp5ZKxF8zbASRyECgjZDBQcAdU3wpyH0NokuJzYHd3pKo90x/q8A3k4E/MTgP
h0NENwqJixC0Dmy3HIJRkedNQ+MaVC4D/2rGwvhypTB3DNzMCG7GlgWoPWyXN/OSnpKGA0ul
NyOtKS6aaDR3V1tt+UJMJ70AF7n7zaz/GC/KFwSPpVk5+0rp8xNjpXbmmjaWuoT4Sly80dKn
pbxbtt02Q5e6SRuen+QVNWSL0L345aTwA9o34SrxGmBVfwZqJ7piF6rerJRyjpDaRyReqetP
+Ekf9ZwFLupAhVuf4o/iwPUsZMjKU3LbyENgNblGzQ43fDlfYvqqQHlhy16xqlA40FclEQhM
XffjBbUoJop/nc47enoM81xGK+dYpnTKc8/EyyuAj/0DOvguk4lbYBcECfctKmwrhEO9TtPwJ
EFNBxNnNaEA+Q/950lokvFX6sFW4LyYKFmFMwQsPFUNyvUGBwaBF5fzXoRSlqQMb6c4acYg3
ZcmPcqlKV/P8tJweNiuJ/Ovi+1SDxhRdYB0cbNPjQOglEa6qPeNQIFglLpkzMkVbzzX6zo4
Mh41745wrJMoOEkqY/0PSXcEjkluMeRHbCQCJSe/PzGwCUOMpcfas2legkdVL3SjQHUACQf
taFNHYqLspmLWEpGtEfW0F/C0EzwcKgxX6FITcgzT0feJRezqXCH0ZMeEoGYp5vxjocQc2Q6
vaeyzQyvm91y3mWO5ibw5Y5QW2zZCssChopZDHwr8xLDNEbNfD4SZZ00LmRR2Syaeae7/axil
h2vW5raMevSjlA2pSEdK0pKa9QKoTalKV8pSQEyypTCNqQUxnStOaCg0uC53.LxtCJsl1eSWHs
LKNNh7q5HnlRch8Clbf8oiErEfWpNpDWg1BZpY+RyZ9QzWpUD7gIGc1PWGOymFC1StZ2cXWQ
Xj1YslTFyYuW9a0ciN0OP/innmLzdKebyJnkCde+lgBzfg2sEsgm2Mla9rCITaxiF8vYxjr2
sZCNrGQnK4EAFOCyBLhsAQYQhMwmsS4AKe/QMBPlsBy3K2spo9LQAEoFkBblC1l3I3WtBAag2QBM
gLaXte0GGQisE3Or2tgX4bQh4uwPWypYYCtPt0tboW7gwLRH//DttZZLrAtYSIAQDWFW4PBDDa
C3AXuicwbhGcC17Lbha1BBAAazm7XgHQ90d99WAfte7jK3vpnVbgVqQ04w9hBCC/pYUvtZIL
ge5W4Ls8gG0B4CvdAasXwPxcFCBDEVW1AKw46LTAtADQsBANbwMPhXaqTARlux86pWALbVsHp
7F0Ri5e6ML4vgTEA4t7OOAMMYbi54dVzcbpXxLPNbZBtS10D13i7QB7ydG+8Aus+N8Waveaw
YKve2Ol4yjKOcgB822AAgNi5mM2AeaM8gDFLebVRFvCBsfxjzNZu2ubklL3FBS9r+bvi55y3t
eVec5Pi6WMQxJrKM9dctczUIXzE829P+ZMWDm0yrYyhrl8XKVq2UJgHnHJcayai3QaAk8us9r
di12dUtbCwfay6Q9coENLWZFO5rNsHWubB8t21ILGbiEReFlM8vZXau3y9R475ZBDdxf2zz
xs5vfv87YwsHWMKcfu6vE53aeZtlPONZqnrN73lpvZP072go8N7fiSdwK7xyjO6n4xm17LY
z+4G9KAHLGhtf9fOzz753rNebAWP72MfdJJzyZ4zxdc0C28Y7c2fV/935J62r99v9ya22ity7310Pa
mtTzNvKOD/xrVXsaz7yOeLhxO4D5DjvbQV6wwwXPcguzeWbWm5fPEC6Y3uH1nN62PXmsaUPvXHU
nta0ZKt5tu1//m2TJBhrOtUW1u2fu6Qd/1tfqvvN1Px5vpsu5sc5dm+YfB++WNvnxV3bn0sGM7
6kgzmeVaV7wWBg77oaJN57AsuO6Ml7maMm1r9qGkBz0oFMftJWnGvrsGbw8sYAl8Sel3LwSN5BRzm8BZ
vmTtGh7nNN+5z1cd1Ed9p8HXtGrtGu27Wsw27UjwWt+3//3/is+3zacgmsqd5qdm+YfB+fBrn0sGM7
L9BwfmO3zUxX85SCFm/aerx3z2Qcy07C9r9c7c+e9ec28Y72cfMiu73Opa
mtTzNvKOD/xrVXsaz7y/CnCLhxO4D5DjvbQV6wwwXPcguzeWbWm5fPE
nta0ZKt5tu1//m2TjBhrOtUW1u2fu6Qd/1tfqvvN1Px5vpsu5sc5dm+YfB+
6kgzmeVaV7wWBg77oaJN57AsuO6Ml7maMm1rjGkB0z9GL5ykXfdybvnQ/9qm5kgb
vmTtGh7nNN+5zlEd9p8HXtG/Tu27Xr//DtBzLrAtYSIAQDWFW4PBDDaAdnfN13+TF22fN4ATQH3I3R13Uv
dn3YBQNj9mpRdl1jJ2u0h2iex2YH52bBpXerBYO552/shWVTN3YWSIFiN4OyxWxpZoOvxVy8U
```

kIJ3RmYbVoG/xWJwZ4FECGRTmHuX5ml692mzt2aKFmxBuGSVpnwVBmk3OH9etoJotoK59mie
hXQ/CIRvOGBCVoVYiFIWd2mqZl6f91xuqGBgJmokB3dghnHaFI7q9YSZV1mHeIhzZ2yK6liP
eHurFXr0B4kawGGh91u3V4i3F3w1I4SUGHq5F4Jq5omTaP+KnfiEgQeKjPiI8NWJr2WJoniK
rfhwixgAnViLnEaJF2iJvchxCceLmagBmYdiuQh2l4iMNWdnvQhfvuhdswiNo3alx4iLwYeK
jJiKv/aJ52BmqIcKckdZWpOI4liO5niO6JiO6riO7NiO7viO9/AYdAUONfAXL6VMrDBMWDRW
P/FDB9VRLtAzVgCQxDA9ThUCS4MbrrQ3fMUC2XKPf6SPvVQTNdQfjpI2wiCQHrBXN+BWK6CR
PQCSHwCRcZVDDGkDD/ILV/RVEwQEQBFJP5GREjmSddSR/MgCIqkOM4mQKuk4OZQ0+uRDM3M7
9IRQ9nQbQAkC6eNTIAMuWpA6qyD/O3UBOIZBIPx0SMQEUBrzTuGgML/yUP6YPNG0UKUCINvz
GUS5k70kVwzBSMyjFq1zNPWyTdyUJZ9jPHzlUz8VMDukla3wLIVRO65DKhSIDJ9kTSqiQY/w
KsykKiQ5T9IgRwICN7vCDTzSKyjilfuzLLzkH+rSIwBkRTaijxFCJv4jQ/EzQ8Chli5iP3FC
V+ezLMu0IKwEGJ0QMX6kPskTSPNhQAspUEkISmZkSoTRSCupm3wZUUq0C4+5IPSyOApiRh3U
BpmZlpvJkpgyKJ85IVT0K7F0nNSjIORUk0QjMTnJQK7JJ/BilygDSfaCVbbZTUYkMbIUKIhU
P1NkkkgV/0qcSUprkEOHiZwCiitlIh/MQ2OlGQ2aBJ1oc6CY2UgjoUqjmRTaeSindBbfWZ+K
kxunqSrAIKAIUEvKoEjrGZG7lC0E2aG5SSfIIBRuoVf6OS38uUv+SUSuFKATCiiz+SyR5KD3
WC2BcpHsY6BUYUqSwgw1lqEuFB++2SBN1JC2Ep6F0aGXCUrJRC2smZ2kdBwsg1TespTrMx+1
aSp54EfX0aK86UweFKOrEpz9KY/h4yVTKZSW8TH1ZD0BIZB+Apa2c1fxBFRtURdwwjzduRoN
hRKUAzD3ID1dSTC/Y5ERsimD0TmSYRhoiTxYeZ8RMZ7I4paUgU38kpzaBJ+EGf9N9NIQd+GP
m/Sniyo+5bkvBrUSDRk3s9qf+nCe8FgH+8IBBpmrvvqrwBqswjqsxFqsxnqsyJqsT6WnJABY
yjo0nuCskIKgHyGtz5oQ0Vqrd+MB1aqt1woQnEOWtwkz2yMvaZkyfdklepla27On35oQJNpK
7ppGOipBnYmfR2VG3fquTEOi75KtipGP2Jmd4vmacXqb08KvOqNIKjpCvQAT5iEj0PKaDZuw
CosQDKufuGSlajWwBCtE66KxV3qxQ1NO0tQwdPGVglmmLqb+DpX24AshGWtJFuzNnuzOJuz
OruzPNuzPvuzQBu0Qju0RFu0Rnu0SJu0Sru0TNu0Tvv/tFAbtVl7tVRbtVZ7tVibtVq7tVzb
tV67WAbgAGLrAAsQtmN7tmgrtgmQAQsgtgagAW2btmnLAADAAHNrt2hLtx6QAGrLt2oLAH7r
AGsLt2f7tgAQtw7wtnZLt3jLuGfruA7AAHibtgsAAGaLtpXrt4MbuGebAJwruBKAuG8btwYç
uhnQuBLQuKh7uZV7uY8rt5V7AZ+bAKRruhZAuofrtpMbuXXLu7srtpP7u8ALu7M7AXw7uP8Q
tgzguXy7AHy7vJ47tgvQttMLuhhgAHzruNdrt8zLvZLbvQyAAN/ruZIrvtCbAJL7AaUruOtb
ts1Lu9Z7AW3bvYk7v+ibuOYL/wDma77Mi77hW777G73L+7bK+7zNa7nzKwHwHNS73zawDw67yj
K7j3awDYm7gVjLwWML7pu7/7W8DNW8CR+74HHL2xawEOTL0JQMHZe8Hbm7fi5u7Y14L8JgAD6
u8HI+7wOHLkgvLxka8DRK7bO67JDLjx2w/Kq70pHLYlnMJMzL4pTLjaiwFTa7goXLd6a8VY
LAEIQMPpq8U0/AGaefwfjMBBFPAFDBLnwO7gVXMGM28P28rmYRRbAF5HLpuO8vO7yDnMWp67tOO8dz/Mhç
PMcKPP/JaOzHGMwPokwBSpzKRHzK8h5u5mfzK62u4XYzFh3zFFtywCYSzB8UvKFGDJv5zJU7y4
tnzFFIDIesvKemzHxgvLGOzLrUzJ2jvFghzJE1DLxZy6DJDKoszNZKvMshu/1XzJsJzJ2EzM
6evJzGy567zKjIzGezeK+gDOrIvC0bwBbuZu9hDu2tPy4XDy2uAzQugzL3EvK0CzNFQDMuYu9
ktvQNfy42hzR7GzPy2zPz1vE0DzJCk3NBB3LxzzMuWzF3hy73iy9HEDK+QzL1mzGHa2959zQ
6WzHlz0B9UzGnRvPAKHOQAzCFg3PCc2+izFghvU31vIVuy/17y82Ly3ghv/t9GLvAe90D89
zYlbvsSsv/0b0nK8zjS9zh98zhn9x8Jcvw4gvm6LAS8dx9vcyszszTxM0eGMvG1r1h4dzltr
ziD9v7yrziXs1geMxsw7xFGdD6JMwp8cxYPN0oV7yRSMvCGNxXAc0ZENAmLct73s0wqN0NJ8
yLybwW6cxfTs1WgL1WWs0WM9y7hLyHmt1jM90V2duStdAShN1nXN0jGs0GINzHz92rz9xJJs
vYmND3/tziTNzMH9whPM2BVgw3pby4+91BtwvOubwgk8xiYc1MPswgnM3JqczaAt020t2s4L
1qVtvWv8wgt93heQv1bMxc1NtwesyK5d0fSdAbOt/8K1jdC4vdr5u9v1Pd+XS9pq7NsAwblr
TbIE/LdCjcm1jbiDjLqLK7ySO7f/Hc6Wvbbru9MZUMFji+GTu7YQTrd0Dbw0TNfh67omzboJ
Xs6gG7ibO9qW++G5W8n5/dCR+8Um/sWBu83LDMTsjOAW3UuGim9nBzOACDry9y8mLDLxUnOJy
ywAO/s2LLM/80L9v27/MS8BBZvuFZzrzX278TEMMzjNVbjOUzLOb9S8Py/eWe29hUvOUa4MBe
rsdzLuYIjuNpHuaeq+NmjsdtDthM/Ody7tuD/ueAIueei8YBOij7NtmTuAVUOhJ
7OVVzOaBDSN57uiTDeeR7v/n/wN7Y7Vk7TIL5Ypz4QMVzmX/1/1rs40MB3rsj7rtF7r7n7
ur7rvN7rvv7rwB7swj7sxf7sxn7srsP3qyr7szyN7zsv7/sb7l70j7t1F7t1n7t2J7t2r7t3N7N
3v7t4B7u4j7u5F7u5n7u6A60cNqPLesChJxuSsOmHQA3tcBQDNAvvO9ChYFKr9Q4D947vx/CT
xKM9A6WhNjQbyxMnEDMWK4SqAG8EA3N8yIRH45AujVmjkDEnK/rwQ0BH3Lmrqal/Mq8IOY+IL
3bQJnwTyHI8EdPRBIsrvl0+gbaKmZOpJxqICK8/yOQSaGDSyyLkdzqIjv4nyxrnxOe8DcMqV
RfPV7gE7On1Bly0Ss0QknxMSIB579LfgkUqZpVgfCFDf9WAf9ml/9mRf9mzZ/9u+YIP14KQSJ
9mbwmFtPoSbw726fEwhqAkih9SFf9x2/royKob7DopJ5LdxxlDAClb7C90QQlLuQLJj6vPmGV
Kzz6TA40axvfBBkTGSWToT+/Stj1EHzpoXR/+SPwHVCS8obEp97PIHBvm6fvraQPA6bvpDfP
+TkqR4RfoGfKJLMZ+zWAU+KqOpGKTmCZ3rRtPFM5sYcfUA7I+8ORdyAf/dl//dRf/dZPUhEA
ADs=

-------------AttPart_18827438==.OLA--

**EXHIBIT 3**

Return-Path: <kajqkalb@yahoo.com>
Received: from [220.173.17.115] (HELO 69.33.227.203)
  by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
  with SMTP id S.0016999843; Mon, 24 Oct 2005 23:49:02 -0700
Received: by bhost.mistus.net (mlFix, from userid 226)
  id 8AE77704E7; Fri, 14 Jan 2005 21:29:56 +0100
Date: Fri, 14 Jan 2005 14:30:56 -0600
Message-ID: <4291692454.16743@dyn-htl-19270.dyn.columbia.edu>
From: "Nona Leach" <kajqkalb@yahoo.com>
To: [DELETED]
Cc: [DELETED]
Subject: Application approval #%RNDUCCHAR16L%RNDDIGIT916

Hello,

We tried contacting you awhile ago about your low interest morta(ge rate.

You have been selected for our lowest rate in years...

You could get over $460,000 for as little as $350 a month!

Ba(d credit, Bank*ruptcy? Doesn't matter, low rates are fixed no matter what!


To get a free, no obli,gation consultation click below:

http://www.wumort.net


Best Regards,

Morgan Vick

to be remov(ed:    http://www.wumort.net/book

**EXHIBIT 4**

Return-Path: <[DELETED]>
Received: from mail.hasit.com ([75.16.30.108] verified)
  by mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1c.2)
  with SMTP id 128084206 for [DELETED]; Sat, 18 Nov 2006 09:53:52 -0800
Received: from mail.reasonabledoubt.com ([75.16.30.107] verified)
  by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
  with ESMTP id S.0051552613 for <[DELETED]>; Sat, 18 Nov 2006 09:53:51 -0800
Received: from a147181.upc-a.chello.nl ([62.163.147.181] verified)
  by mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1c.2)
  with SMTP id 128042393 for [DELETED]; Sat, 18 Nov 2006 04:00:25 -0800
Return-path: <[DELETED]@hypertouch.com>
X-Original-To: [DELETED]
Delivered-To: [DELETED]
Received: from [62.163.147.181] (port=34747 helo=a147181.upc-a.chello.nl)
        by mail2.hypertouch.com with esmtp
        id 187604-187604-27
        for [DELETED]; Tue, 05 Dec 2006 05:03:25 +0100 (EET)
Message-ID: <532601c7182a$01c7182a$b593a33e@hypertouch.com>
From: "Geneva" <[DELETED]@hypertouch.com>
To: "Wilda" <[DELETED]>
Subject: quality funding for the usa!
Date: Tue, 05 Dec 2006 05:03:25 +0100 (EET)
MIME-Version: 1.0
Content-Type: multipart/alternative;
        boundary="----=_NextPart_001_5325_01C71822.4FE634B0"
X-Priority: 3
X-MSMail-Priority: Normal
X-Mailer: Microsoft Outlook Express 6.00.2900.2180
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2900.2180

Hello,
Hello H0me 0wners.......G00d News....!! Lowest M o r t a g a g e R a t e s in decades.
There is no obligation and this is a FREE quote! Debt Consolidation . Home Improvement. Refinancing .
Second Mortgage . Equity Line of Credit, First Purchase.
It does NOT cost anything, just fill up a online form - we request you to take just 2 minutes off your
valuable time for lowering you.
look: http://formsfresh.com
...
Have a good holidays!

**EXHIBIT 5**

```
Return-Path: <moreomega@pufynet.info>
Received: from [204.13.20.2] (HELO mailpool.jriad.info)
   by mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.2)
   with ESMTP id 30594386 for [DELETED]; Sat, 16 Apr 2005 10:12:35 -0700
message-id: <021d01c542a7$f946b720$4c6321fd@KGLSNYV>
From: "moreomega" <moreomega@pufynet.info>
To: <[DELETED]>
Subject: Claim your Complimentary 42" Brand Name Plasma Tv- $2300 Value
Date: Sat, 16 Apr 2005 10:16:05 -0800
MIME-Version: 1.0
Content-Type: multipart/alternative;
        boundary="----2876956904961141"
X-Priority: 3
X-MSMail-Priority: Normal
X-Mailer: Microsoft Outlook Express 6.00.2800.1437
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2800.1441
```



EXHIBIT 5 PAGE 25

**EXHIBIT 6**

```
Received: from [72.11.147.58] (HELO endogenter.com)
   by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
   with ESMTP id S.0022470904 for <[DELETED]>; Sun, 01 Jan 2006 23:37:40 -0800
From: mStyle <Lexington.ffjy@endogenter.com>
To: [DELETED]
Subject: Billboard Top 10 Ringtones & Horoscopes- No Charge
Date: 02 Jan 2006 02:37:24 -0500
Message-Id: <23633426@dslamokpydZ-bdwrg>
X-E: kzshtvrwfkG/ikdyn
MIME-Version: 1.0
Content-Type: multipart/alternative;
 boundary="09845039450394dslamokpydZ-bdwrgirmar"
```



THE FOLLOWING IS AN ADVERTISEMENT SENT BY A MSTYLE AFFILIATE.
IF YOU HAVE ANY QUESTIONS OR CONCERNS, YOU MAY CONTACT US AT THE FOLLOWING ADDRESS:
MSTYLE LLC, ONE BROADWAY, 14TH FLOOR CAMBRIDGE, MA 02142
TO UNSUBSCRIBE FROM FUTURE MAILINGS FROM MSTYLE CLICK HERE.
SHOULD YOU WISH TO UNSUBSCRIBE FROM THE LIST WHO SENT YOU
THIS EMAIL, PLEASE FOOLOW THE UNSUBSCRIPTION INFORMATION BELOW:

If you prefer not to receive e-promos from us in the future,
please visit: HERE Your receipt of our e-mails is subject to our Privacy Policy.

If you would like to write us regarding any questions:
M e m o r i a l P l a c e C e n t e r
7 6 3 3 E 6 3 r d P L
S T E 3 0 0
T u l s a , O K 7 4 1 3 3 - 1 2 0 2
9 1 8 . 3 9 8 . 8 0 1 7

EXHIBIT 6 PAGE 26

**EXHIBIT 7**

```
Received: from [72.11.146.11] (HELO cgwcorps.com)
  by mail.hasit.com (Stalker SMTP Server 1.8b9d14)
  with ESMTP id S.0022369496 for <[DELETED]>; Sat, 31 Dec 2005 22:17:44 -0800
From: Mobile Chat <Robbins.ffvy@cgwcorps.com>
To: [DELETED]
Subject: Get unlimited incoming chat Messages
Date: 01 Jan 2006 01:17:36 -0500
Message-Id: <11710421@dslamokpydZ-lwylylwy>
MIME-Version: 1.0
Content-Type: multipart/alternative;
  boundary="kT2vYqlLaBmTtKMlXWQ4KXUoXhsEfJE"
```



THE ABOVE IS AN ADVERTISEMENT SENT BY SPICYMINT AFFILIATE.
IF YOU HAVE ANY QUESTIONS OR CONCERNS, YOU MAY CONTACT US AT THE FOLLOWING ADDRESS:
SPICYMINT 1054 CENTRE ST, SUITE 572, THORNHILL, ON L4J 8E5
TO UNSUBSCRIBE FROM ANY FUTURE MAILINGS FROM SPICYMINT CLICK HERE
SHOULD YOU WISH TO UNSUBSCRIBE FROM THE LIST OWNER WHO SENT YOU THIS
EMAIL, PLEASE FOLLOW THE UNSUBSCRIPTION INFORMATION BELOW:

If you prefer not to receive e-promos from us in the future,
please visit: HERE Your receipt of our e-mails is subject to our Privacy Policy.

If you would like to write us regarding any questions:
S u m m i t W o o d s
3 0 0 E B u s i n e s s W a y
S u i t e 2 0 0
C i n c i n n a t i , O H , 4 5 2 4 1
6 1 4 . 2 8 3 . 9 1 4 9

EXHIBIT 7 PAGE 27

**EXHIBIT 8**

**ATTACHMENT A**

**All Major ISPs and many state Attorney Generals warn against attempting to "opt out" of spam**

---

http://www.microsoft.com/dynamics/community/avoidspam.mspx

Avoid replying to spammers.

Spam messages may tell you how to opt out of future mailings for example, by replying with "REMOVE" in the subject line. But many spammers deceptively include these instructions just to confirm they've reached a working e-mail address.
Unless you know the message sender or you're unsubscribing from a mailing list you signed up for, you should delete these messages without responding.

---

http://office.microsoft.com/en-us/help/HA010701261033.aspx

Avoid replying to the sender
When you reply and type REMOVE in the subject line, this is a great way to let spammers know that yes, your e-mail address is up, running, and being used right now. It's like waving a white flag that says, "I read unsolicited e-mail. Please send more."

---

http://www.earthlink.net/about/press/fighting_spam/

Never reply to spam.
Legitimate companies will allow you to unsubscribe to an email list by hitting reply and typing remove from list in the subject line. For spammers, however, your reply is simply verification that they hit a valid email address, and you'll be forever on their list.

---

http://sbc.antispam.yahoo.com/tips

Never respond to unsolicited email - this can alert the sender that your email address is valid.
Never click on a URL or web site listed in spam - this will also alert the sender that your email address is valid.

---

http://www.att.com/gen/general?pid=1401

If you receive spam, don't reply to the sender or follow any removal instructions that might be included in the e-mail.

---

http://www.comcast.com/Customers/FAQ/FaqDetails.ashx?Id=2397

Do not reply to unsolicited e-mails.

---

http://www.spamhaus.org/removeisformugs.html

By sending back a 'remove me' opt-out request you are confirming to the spammer that your address is live, you are confirming that your ISP doesn't use spam filters, you are confirming that you actually

Opt-Out-Warning: 1

EXHIBIT 8 PAGE 28

open and read spams, and that you follow the spammer's instructions such as "click this to be removed". You are the perfect candidate for more spam.

---

https://www22.verizon.com/foryourhome/eRepairNet/DSLRepairANR/Common/SupportDetails.aspx?case=c2281

Don't respond to spam. Some spam messages contain links that promise to remove your email address from a mailing list. However, when you select these links, you prove that your email address works, and the person who sent the message could sell your email address to other spammers.

---

http://www.charter.com/Visitors/Support.aspx?SupportArticleID=63

Do not attempt to unsubscribe from spam. This will only confirm to the spammers that the email account is being actively read. Once the spammers know an account is active, the amount of spam may actually increase

---

http://www.netzero.net/support/security/info/control-spam.html

Do not follow instructions to reply with the word 'remove' or 'unsubscribe' in the subject line or body of the message unless it is from a trusted source. This is often a ploy to get you to react to the email. Not only will spammers fail to unsubscribe you, they will have even more incentive to sell your address - which you've validated with your response.
Never click on a URL or web address listed within a spam email even if the message tells you that is how you unsubscribe, unless it is from a trusted source. This also alerts the sender that your email address is active and can result in more spam.

---

http://www.stanford.edu/group/itss-ccs/security/junkmail.html

Do not reply to spam! Some junkmail messages urge you to send an "unsubscribe" reply to their service if you want to get off their list. This is a common ploy for harvesting email addresses; instead of getting off their lists, you'll be added to others (your email address may even be sold to other direct marketers), and you'll find yourself getting more spam than before.

---

http://www.qwest.com/about/protection/checklist_computer.html

Don't reply to a spam message. You will only get more spam.

---

http://www.messagelabs.com/About_Us/News_Events/Press_Releases

New York, NY, 5th October 2004 - MessageLabs, the leading provider of managed email security services to businesses, is today urging global email users not to click on the opt-out link on spam emails as it has intercepted a number of messages using this feature to turn PCs into open proxies for distributing further spam.

---

http://ag.ca.gov/consumers/general/spam10.php

Never respond to unsolicited email. Your response is likely to trigger more spam to your email address.

---

Opt-Out-Warning: 2

EXHIBIT 8 PAGE 29

http://www.oag.state.tx.us/consumer/spam.shtml

**Use the "remove" feature with great caution.** A reputable business concerned about customer relations will honor your request to be removed from their list. However, it has been standard operating procedure among unscrupulous spammers for years to use the remove feature to identify active mailboxes. The reality is, when you use the remove feature, you may be inviting more, not less, spam. Here again, state and federal law have outlawed an undesirable practice, but that doesn't mean it will be discontinued.

http://myfloridalegal.com/pages.nsf/Main/CF6B2EA408EF89A585256EBB006E8646?OpenDocument

**Do Not Respond to SPAM.** Responding, even if you are only asking to be "removed" from a mailing list, can increase the amount of spam e-mail you receive because spammers know your address is active. Always be wary of e-mails, and links or pop-ups in e-mails, seeking personal information as legitimate businesses do not generally request information by e-mail.

http://www.mass.gov/?pageID=ocaterminal&L=4&L0=Home&L1=Consumer&L2=Privacy&L3=Junk+Mail&sid=Eoca&b=terminalcontent&f=stopping_junk_mail&csid=Eoca

**Don't reply to the spammer!** Most "spammers" not only will ignore your request to be dropped from the mailing list, but they also will interpret your response as a positive sign that the message was actually read. Don't encourage spammers by buying their products or responding to their E-mail.

http://security.fnal.gov/handouts/DealingWithSpam.pdf

**Avoid Unsubscribe or Opt out Links**
Many spam messages will contain links that claim if you click on them will remove you from their mailing list. What you are really doing is verifying that your email address goes to a real person.

http://www.michigan.gov/ag/0,1607,7-164-34739_20942-57953--,00.html

Do not open, and never respond, to junk e-mail. Although spammers say they will remove you from their list if you "opt out", many will use your response as an indicator that your account is active and will send you additional junk e-mail and sell your address to other marketers.

http://www.cio.ne.gov/tech_serv/email/ube/spamTips.html

**Do Not Unsubscribe From SPAM**
Do not click the Unsubscribe/Remove me from your list links on SPAM messages. This only notifies the Spammer that your email address is a valid one and they will send you more spam.

http://dti.delaware.gov/information/cybersecuritydigiKNOW.shtml

*digiKNOW* that when you respond to an unsolicited spam email and ask them to remove you, you usually get sent MORE spam?

Opt-Out-Warning: 3

EXHIBIT 8 PAGE 30

Exhibit B



# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 15 2008

John A. Clarke, Executive Officer/Clerk

By A. Williams, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AZOOGLE, INC., a Delaware corporation, INTUIT, INC., a Delaware corporation, QUICKEN LOANS, INC., a Delaware corporation, ROCK HOLDINGS, INC., a Delaware corporation, and DOES 1-30,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HYPERTOUCH, INC., a California corporation,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso:)* **SC097839** |
|---|---|

LOS ANGELES SUPERIOR COURT
WEST DISTRICT
Santa Monica Courthouse
1725 Main Street
Santa Monica, California 90401

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence P. Riff (SBN 104826) / Lynn R. Levitan (SBN 176737)   Telephone: (213) 439-9400   Facsimile: (213) 439-9599
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071

DATE: APR 15 2008   JOHN A. CLARKE, CLERK   Clerk, by _A. Williams_, Deputy
*(Fecha)*   *(Secretario)*   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

4/5

Exhibit C

1    Lawrence P. Riff (State Bar No. 104826)
     *lriff@steptoe.com*

2    Lynn R. Levitan (State Bar No. 176737)
     *llevitan@steptoe.com*

3    **STEPTOE & JOHNSON LLP**
     633 West Fifth Street, Suite 700

4    Los Angeles, California 90071
     Telephone: (213) 439-9400

5    Facsimile: (213) 439-9599

6    Attorneys for Plaintiff
     HYPERTOUCH, INC.

7

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 19 2008

JOHN A. CLARKE, CLERK

BY J. DENHAM, DEPUTY

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **COUNTY OF LOS ANGELES**

| | |
|---|---|
| HYPERTOUCH, INC., a California corporation, | Case No. SC097839 |
| Plaintiff, | **PROOF OF SERVICE OF SUMMONS, COMPLAINT AND NOTICE OF RELATED CASE** |
| vs. | |
| AZOOGLE, INC., a Delaware corporation, INTUIT, INC., a Delaware corporation, QUICKEN LOANS, INC., a Delaware corporation, ROCK HOLDINGS, INC., a Delaware corporation, and DOES 1-30, | |
| Defendants. | |

PROOF OF SERVICE OF SUMMONS, COMPLAINT AND NOTICE OF RELATED CASE

Attorney or Party without Attorney:
LAWRENCE P. RIFF, Bar #104826
STEPTOE & JOHNSON LLP
633 WEST FIFTH STREET
SUITE 700
LOS ANGELES, CA 90071
Telephone No: 213-439-9400

Ref. No. or File No.:

Attorney for: Plaintiff

For Court Use Only

Insert name of Court, and Judicial District and Branch Court:
LOS ANGELES COUNTY SUPERIOR COURT, WEST DISTRICT

Plaintiff: HYPERTOUCH, INC., ETC.

Defendant: AZOOGLE, INC., ETC., ET AL.

| **PROOF OF SERVICE SUMMONS & COMPLAINT** | Hearing Date: | Time: | Dept/Div: | Case Number: SC097839 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS; COMPLAINT; NOTICE OF RELATED CASE.

3. a. Party served:        ROCK HOLDINGS, INC., A DELAWARE CORPORATION
   b. Person served:      LESLIE BEHR. AGENT AUTHORIZED TO ACCEPT SERVICE.

4. Address where the party was served:      1620 26TH STREET
                                      4TH FLOOR, NORTH TOWER
                                      SANTA MONICA, CA 90404

5. I served the party:
   b. **by substituted service.** On: Wed., May. 07, 2008 at: 4:20PM by leaving the copies with or in the presence of:
                "JANE DOE" RECEPTIONIST. DESCRIPTION: BLACK FEMALE, 5'6",
                145LBS, 44 YRS, BLACK HAIR, BROWN EYES.
   (1) **(Business)** a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the
        person served. I informed him or her of the general nature of the papers.
   (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: ROCK HOLDINGS, INC., A DELAWARE CORPORATION
   Under CCP 416.10 (corporation)

7. **Person Who Served Papers:**               Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. JONATHAN SOLIS                  d. **The Fee for Service was:**

                                           e. I am: (3) registered California process server
**First Legal Support Services** sm           (i)   Independent Contractor
       ATTORNEY SERVICES              (ii)   *Registration No.:*     3477
      1511 BEVERLY BOULEVARD         (iii)   *County:*            Los Angeles
      Los Angeles, CA 90026
      (213) 250-1111, FAX (213) 250-1197

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Fri, May. 09, 2008

PROOF OF SERVICE
SUMMONS & COMPLAINT

(JONATHAN SOLIS)

4087041.lawri.131515

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|

LAWRENCE P. RIFF, Bar #104826
STEPTOE & JOHNSON LLP
633 WEST FIFTH STREET
SUITE 700
LOS ANGELES, CA 90071
Telephone No: 213-439-9400     FAX No:

Ref. No or File No.:

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
LOS ANGELES COUNTY SUPERIOR COURT, WEST DISTRICT

Plaintiff: HYPERTOUCH, INC., ETC.

Defendant: AZOOGLE, INC., ETC., ET AL.

| **PROOF OF SERVICE**<br>**By Mail** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>SC097839 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the SUMMONS; COMPLAINT; NOTICE OF RELATED CASE.

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

    a. Date of Mailing:            Thu., May. 08, 2008
    b. Place of Mailing:          LOS ANGELES, CA 90026
    c. Addressed as follows:    ROCK HOLDINGS, INC., A DELAWARE CORPORATION
                               1620 26TH STREET
                               4TH FLOOR, NORTH TOWER
                               SANTA MONICA, CA 90404

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Thu., May. 08, 2008 in the ordinary course of business.

5. *Person Serving:*
    a. Thomas Tilcock
    b. FIRST LEGAL SUPPORT SERVICES
       1511 W. BEVERLY BLVD
       LOS ANGELES, CA 90026
    c. 213-250-9111

Recoverable Cost Per CCP 1033.5(a)(4)(B)
    d. *The Fee for Service was:*
    e. I am: Not a Registered California Process Server

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Fri, May. 09, 2008

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
By Mail

(Thomas Tilcock)     4087041.lawri.131515

8-11-08

AM

Lawrence P. Riff (State Bar No. 104826)
lriff@steptoe.com
Lynn R. Levitan (State Bar No. 176737)
llevitan@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 700
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Plaintiff
HYPERTOUCH, INC.

FILED
LOS ANGELES SUPERIOR COURT

MAY 19 2008

JOHN A. CLARKE, CLERK

BY J. DENHAM, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| HYPERTOUCH, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> AZOOGLE, INC., a Delaware corporation, INTUIT, INC., a Delaware corporation, QUICKEN LOANS, INC., a Delaware corporation, ROCK HOLDINGS, INC., a Delaware corporation, and DOES 1-30, <br><br> Defendants. | Case No. SC097839 <br><br> **PROOF OF SERVICE OF SUMMONS, COMPLAINT AND NOTICE OF RELATED CASE** |

PROOF OF SERVICE OF SUMMONS, COMPLAINT AND NOTICE OF RELATED CASE

Attorney or Party without Attorney:
LAWRENCE P. RIFF, Bar #104826
STEPTOE & JOHNSON LLP
633 WEST FIFTH STREET
SUITE 700
LOS ANGELES, CA 90071
Telephone No: 213-439-9400

Attorney for: Plaintiff

Ref. No. or File No.:

For Court Use Only

Insert name of Court, and Judicial District and Branch Court:

LOS ANGELES COUNTY SUPERIOR COURT, WEST DISTRICT

Plaintiff: HYPERTOUCH, INC., ETC.

Defendant: AZOOGLE, INC., ETC., ET AL.

| PROOF OF SERVICE SUMMONS & COMPLAINT | Hearing Date: | Time: | Dept/Div: | Case Number: SC097839 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT; NOTICE OF RELATED CASE.

3. a. Party served:
   b. Person served:

   INTUIT, INC., A DELAWARE CORPORATION
   BECKY DEGEORGE, CSC LAWYERS INCORPORATING SERVICE,
   REGISTERED AGENT.

4. Address where the party was served:

   2730 GATEWAY OAKS DRIVE
   SUITE 100
   SACRAMENTO, CA 95833

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Wed., May. 07, 2008 (2) at: 11:15AM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: INTUIT, INC., A DELAWARE CORPORATION
   Under CCP 416.10 (corporation)

7. Person Who Served Papers:
   a. BRIAN BOWLES

   Recoverable Cost Per CCP 1033.5(a)(4)(B)

   d. *The Fee for Service was:*

   e. I am: (3) registered California process server
      (i) Employee
      (ii) Registration No.:    2006-55
      (iii) County:             Sacramento
      (iv) Expiration Date:     Thu, Sep. 18, 2008

**First Legal Support Services** SM
ATTORNEY SERVICES
1814 "I" STREET
Sacramento, CA 95814
(916) 444-5111, FAX 443-3111

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Thu, May. 08, 2008

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUMMONS & COMPLAINT

(BRIAN BOWLES)
4086975.lawri.131283

55/69

8-11-08

AD

ORIGINAL

1   Lawrence P. Riff (State Bar No. 104826)
    lriff@steptoe.com
2   Lynn R. Levitan (State Bar No. 176737)
    llevitan@steptoe.com
3   **STEPTOE & JOHNSON LLP**
    633 West Fifth Street, Suite 700
4   Los Angeles, California 90071
    Telephone:  (213) 439-9400
5   Facsimile:  (213) 439-9599

6   Attorneys for Plaintiff
    HYPERTOUCH, INC.
7

FILED
LOS ANGELES SUPERIOR COURT

MAY 19 2008

JOHN A. CLARKE, CLERK

BY J. DENHAM, DEPUTY

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **COUNTY OF LOS ANGELES**

10

11  HYPERTOUCH, INC., a California          )
    corporation,                           )   Case No.  SC097839
12                                          )
            Plaintiff,                      )
13                                          )   **PROOF OF SERVICE OF SUMMONS,**
        vs.                                 )   **COMPLAINT AND NOTICE OF**
14                                          )   **RELATED CASE**
    AZOOGLE, INC., a Delaware corporation,  )
15  INTUIT, INC., a Delaware corporation,   )
    QUICKEN LOANS, INC., a Delaware         )
16  corporation, ROCK HOLDINGS, INC., a     )
    Delaware corporation, and DOES 1-30,    )
17                                          )
            Defendants.                     )
18                                          )

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE OF SUMMONS, COMPLAINT AND NOTICE OF RELATED CASE

Attorney or Party without Attorney:
LAWRENCE P. RIFF, Bar #104826
STEPTOE & JOHNSON LLP
633 WEST FIFTH STREET
SUITE 700
LOS ANGELES, CA 90071
Telephone No: 213-439-9400

Ref. No. or File No.:

Attorney for: Plaintiff

For Court Use Only

Insert name of Court, and Judicial District and Branch Court:

LOS ANGELES COUNTY SUPERIOR COURT, WEST DISTRICT

Plaintiff: HYPERTOUCH, INC., ETC.

Defendant: AZOOGLE, INC., ETC., ET AL.

| PROOF OF SERVICE SUMMONS & COMPLAINT | Hearing Date: | Time: | Dept/Div: | Case Number: SC097839 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT; NOTICE OF RELATED CASE.

3. a. *Party served:*
   b. *Person served:*

QUICKEN LOANS, INC., A DELAWARE CORPORATION
MARGARET WILSON, PROCESS SPECIALIST, CT CORPORATION
SYSTEM, REGISTERED AGENT.

4. *Address where the party was served:*

818 WEST SEVENTH STREET
2ND FLOOR
LOS ANGELES, CA 90017

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Wed., May. 07, 2008 (2) at: 11:10AM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:* QUICKEN LOANS, INC., A DELAWARE CORPORATION
   Under CCP 416.10 (corporation)

7. ***Person Who Served Papers:***                                  Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. DOUG FORREST                                        d. *The Fee for Service was:*
   **b. FIRST LEGAL SUPPORT SERVICES**                    e. I am: (3) registered California process server
      1511 W. BEVERY BLVD.                                     *(i)* Independent Contractor
      LOS ANGELES, CA 90071                                   *(ii) Registration No.:* 5141
   c. 213-250-1111                                             *(iii) County:*          Los Angeles

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date:Thu, May. 08, 2008

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUMMONS & COMPLAINT

(DOUG FORREST) 4087056.lawri.131291

5/8.

8-11-08   J

AB

1  Lawrence P. Riff (State Bar No. 104826)
   *lriff@steptoe.com*
2  Lynn R. Levitan (State Bar No. 176737)
   *llevitan@steptoe.com*
3  **STEPTOE & JOHNSON LLP**
   633 West Fifth Street, Suite 700
4  Los Angeles, California 90071
   Telephone: (213) 439-9400
5  Facsimile: (213) 439-9599
6  Attorneys for Plaintiff
   HYPERTOUCH, INC.
7

**ORIGINAL**

FILED
LOS ANGELES SUPERIOR COURT

MAY 1 9 2008

JOHN A. CLARKE, CLERK

BY J. DENHAM, DEPUTY

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **COUNTY OF LOS ANGELES**

10

11  HYPERTOUCH, INC., a California          )   Case No. SC097839
    corporation,                            )
12                                          )
                      Plaintiff,            )   **PROOF OF SERVICE OF SUMMONS**
13                                          )
            vs.                             )
14                                          )
    AZOOGLE, INC., a Delaware corporation,  )
15  INTUIT, INC., a Delaware corporation,   )
    QUICKEN LOANS, INC., a Delaware         )
16  corporation, ROCK HOLDINGS, INC., a     )
    Delaware corporation, and DOES 1-30,    )
17                                          )
                      Defendants.           )
18                                          )

19

20

21

22

23

24

25

26

27

28

---

PROOF OF SERVICE OF SUMMONS

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):<br>Lawrence P. Riff (SBN: 104826); Lynn R. Levitan (SBN: 176737)<br>Steptoe & Johnson LLP<br>633 West 5th Street, Ste. 700<br>Los Angeles CA 90071<br>TELEPHONE NO.: 213-439-9400     FAX NO. (Optional): 213-439-9599<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff HYPERTOUCH, INC. | FOR COURT USE ONLY |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles |
|---|
| STREET ADDRESS: 1725 Main Street |
| MAILING ADDRESS: Santa Monica Courthouse |
| CITY AND ZIP CODE: Santa Monica CA 90401 |
| BRANCH NAME: West District |

| PLAINTIFF/PETITIONER: HYPERTOUCH, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: AZOOGLE, INC. | SC097839 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:

    a.  ☑ summons

    b.  ☑ complaint

    c.  ☑ Alternative Dispute Resolution (ADR) package

    d.  ☐ Civil Case Cover Sheet *(served in complex cases only)*

    e.  ☐ cross-complaint

    f.  ☑ other *(specify documents):* See Attachment.

3.  a.  Party served *(specify name of party as shown on documents served):*

    Azoogle, Inc., a Delaware corporation.

    b.  ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4.  Address where the party was served:
    CT Corporation System, 111 Eighth Avenue, New York NY 10011

5.  I served the party *(check proper box)*

    a.  ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 05-07-08     (2) at *(time):* 2:05 pm

    b.  ☐ by substituted service. On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1)  ☒ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2)  ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3)  ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4)  ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or  ☐ a declaration of mailing is attached.

        (5)  ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: HYPERTOUCH, INC. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: AZOOGLE, INC. | SC097839 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:          (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  ☐  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of *(specify)*:
  c.  ☐  as occupant.
  d.  ☐  On behalf of *(specify)*:
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)        ☐ 415.46 (occupant)
                                ☐ other:

7.  **Person who served papers**
  a.  Name:  Robert Mills
  b.  Address:        **Capitol Process Services, Inc.**
  c.  Telephone number:    **1827 18th Street, NW**
  d.  The fee for service was: $  **Washington, DC 20009**
  e.  I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i)  ☐ owner  ☐ employee  ☐ independent contractor.
      (ii)  Registration No.: 1004-2078
      (iii)  County:

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: *May 9, 2008*    *State County of New York*

*Sworn to before me on 9th day this of May, 2008*

*Robert Mills*           ▶ x *Robert Mills*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)    (SIGNATURE)

JONATHAN T. RIPPS
Notary Public, State of New York
NO. 01RI6109718
Qualified in Rockland County
Certificate Filed in New York County
Commission Expires May 17, 20 28

ATTACHMENT

* Civil Case Cover Sheet Addendum and Statement of Location

* Notice of Case Assignment to Individual Court Calendar

* Notice to Litigants

* ADR Package

* Notice of Related Case

Exhibit D



## Corporations

The information displayed here is current as of "MAY 30, 2008" and is updated weekly. It is not a complete or certified record of the Corporation.

**Business Search Corporations**

Printer Friendly Page

**New Search**

**Search Tips**

**Field Definitions**

**Status Definitions**

**Name Availability**

**Corporate Records**

**Business Entities Records Order Form**

  **Certificates**
  **Copies**
  **Status Reports**

**FAQS**

**Corporations Main Page**

**Site Search**

| Corporation | | |
| --- | --- | --- |
| ROCK HOLDINGS, INC. | | |
| **Number:** C2845333 | **Date Filed:** 1/1/2006 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 3525 EASTHAM DR STE A | | |
| CULVER CITY, CA 90232 | | |
| **Agent for Service of Process** | | |
| ** RESIGNED ON 05/08/2008 | | |

Printer Friendly

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

Exhibit E

8-K 1 f82568e8vk.htm FORM 8-K

**Table of Contents**

## SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM 8-K
## CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

**June 24, 2002**
(Date of Report)
Date of earliest event reported: June 20, 2002

**Intuit Inc.**
(Exact name of Registrant as specified in its charter)

**Delaware**
(State or other jurisdiction of incorporation)

| 0-21180 | 77-0034661 |
|---|---|
| (Commission File Number) | (I.R.S. Employer Identification No.) |

**2535 Garcia Avenue**
**Mountain View, California 94043**
(Address of principal executive offices)
(Zip Code)

Registrant's telephone number, including area code:
**(650) 944-6000**

---

# TABLE OF CONTENTS

ITEM 5. OTHER EVENTS.
SIGNATURES

**Table of Contents**

## ITEM 5. OTHER EVENTS.

**Proposed Divestiture of Quicken Loans Business**

On June 20, 2002, Intuit Inc. ("Intuit") announced that it had signed a definitive agreement to sell its Quicken Loans mortgage business. When the transaction closes, Quicken Loans will become a wholly owned subsidiary of a newly created company and will continue to offer residential home mortgages and home equity loans under the Quicken Loans brand. The new company's investors will be led by Dan Gilbert, chairman of Quicken Loans and founder of Rock Financial Corp. (the predecessor of Quicken Loans), which Intuit acquired in December 1999.

Based on the terms of the agreement, Intuit will receive cash, a note and multi-year licensing fees in exchange for all of the outstanding stock of Intuit's Quicken Loans Inc. and Title Source Inc. subsidiaries. Intuit will also receive a 12.5 percent equity interest in the new company. The new company will license from Intuit use of the Quicken Loans trademark for its residential home loan and home equity loan products. In addition, the two parties have entered into a five-year distribution agreement through which Quicken Loans will provide mortgage services on Quicken.com. Intuit has also agreed to continue providing a line of credit to fund mortgage loans for a transition period of up to six months after the transaction closes. Such funding is customary in the mortgage origination market.

Intuit expects to treat the sale of the Quicken Loans business as a discontinued operation for accounting purposes. Accordingly, after the closing Intuit will amend its financial results for fiscal years 2000, 2001 and 2002 to reflect the exclusion of the results of the discontinued business.

Intuit purchased the Quicken Loans business in December 1999. Because the transaction was accounted for as a pooling of interests, Intuit's current balance sheet reflects the current net value of the tangible assets it acquired, rather than the purchase price paid. Accordingly, there will be no write-off of intangible assets (such as goodwill) associated with the sale of the business. Intuit expects to recognize a small gain on divestiture that will be reflected in its GAAP (Generally Accepted Accounting Principles) financial results, because the consideration Intuit will receive exceeds the book value of the assets being sold. The transaction is expected to close within 90 days. The closing of the transaction is subject to standard closing conditions, including but not limited to various regulatory approvals.

**Table of Contents**

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: June 21, 2002                          INTUIT INC.


                                             By:              /s/ GREG J. SANTORA
                                                 _____

                                                          Greg J. Santora
                                                     Senior Vice President and
                                                     Chief Executive Officer

3